# STATE v. AL GROENE.[1]

January 10, 1930.

No. 27,709.

*Mark & Barron,* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Byron R. Wilson,* County Attorney, for the state.

HOLT, J.

Appeal from a conviction for unlawfully transporting intoxicating liquor.

On March 1, 1929, the county attorney had information that defendant was likely during that evening to bring some liquor in an

[1]Reported in 228 N. W. 615.

automobile from St. Cloud to Wadena, Minnesota, where he lived. Two young men, Iverson and Kingsley, were asked to go in a car to Hewitt, a village some 12 miles east of Wadena, and trail defendant should he appear. These men went as directed, and when defendant between 8:45 and 9 p. m. passed rapidly through Hewitt they followed. These men as well as defendant drove a Chevrolet car. The speed on the highway at times exceeded 60 miles an hour. When Wadena was reached defendant zigzagged over different streets as speedily as the frequent turning of corners permitted, passing his own home without stopping, crossing railroad tracks, and heading to the outskirts of town, when the wheels on the right side of the car got out into the ridge made by the snowplow, went through, and getting no traction stalled the car. Iverson and Kingsley stopped some 250 feet back to note his conduct. After vainly trying to start the car, he turned off the lights, opened the left rear door and, after staying there a few moments, disappeared in front of the stalled car. The nearest house was the sheriff's home. Defendant went there and telephoned a garage-keeper to come and pull him out. The sheriff followed defendant to the car and looked inside but found no liquor, only a crushed paper carton. In the meantime Iverson and Kingsley informed the county attorney of the situation, and the chief of police was notified and came upon the scene. The chief had a strong searchlight, and in examining the road with the sheriff some 150 feet ahead of the place where defendant's car had stopped a track was found in the snowbank to the left of the road, and eight or ten feet therefrom a piece of a gunny-sack sticking out of the snow attracted their attention. It proved to be two gunny-sacks, each containing three paper cartons in each of which was a gallon jug of moonshine. The day had been mild so that the snow had thawed, but when it turned cold in the evening a crust formed. The testimony was that there was loose snow on the sacks, and the snow where they were found indicated a disturbance of the crust after it had formed.

We have no hesitancy in concluding that the jury were fully justified in finding that when defendant's car stalled and he turned out his lights he took out the liquor he was transporting and shifted

it temporarily to the snowdrift where it was found by the chief of police. The testimony shows that it was potable moonshine. Evidence to which no objection was or could be raised supports the verdict.

Error is assigned because a letter, exhibit G, dated February 15, 1929, from one who signed himself Sid, written to defendant, was received and read to the jury, then afterwards withdrawn from its consideration by the court. It was a dunning letter for goods sold and contained this statement:

"I was fair enough to take you at your word when you told me that some of the material was planted."

A bill from the telephone company showing that on March 1, 1929, there was a toll charged against defendant for a telephone communication to Des Marais at St. Cloud (Groene—Des Marais) went in without objection. Defendant reluctantly admitted knowing Sid Des Marais but denied knowledge of his being a dealer in liquor. He finally testified that he had no dealings at all with Des Marais except that he had borrowed some money of him. As affecting defendant's credibility respecting his whereabouts and business the day in question in connection with the telephone communication from defendant's house to Des Marais, we are not persuaded that it was error to admit exhibit G. We think the letter was properly admitted. That being so, defendant is in no position to complain of what occurred in relation to the letter. There was afterwards a motion to strike out the telephone bill which had been admitted in evidence without objection; also the letter exhibit G on the ground that these exhibits and others had been obtained from defendant's wife. But no complaint of the ruling denying this motion is made in the brief, and could not well be made under the law in this state which does not much concern itself where the state procured the evidence offered in a criminal trial. State v. Pluth, 157 Minn. 145, 195 N. W. 789.

Error is assigned upon the overruling of an objection to this question asked defendant on cross-examination, concerning the "Sweet Shop" he had been conducting in Wadena some months

previously: "Was there a hole in the floor of the toilet room?" Defendant answered that he did not remember of any hole there. When the state in rebuttal proved by a former employe in the "Sweet Shop" that there was a large square hole in the floor over which generally stood a can containing liquid soap, no objection was interposed. It seems clear that this court is not warranted in seriously considering whether the ruling mentioned prejudiced defendant, even though defendant testified that part of the stock in trade was kept in the basement into which the hole opened.

Exhibit I, a slip account having the heading "Groene Sid acct." containing items footing up $84.50, defendant admitted to be in his handwriting. Exhibits H and J, slips showing names and after each name certain figures suggesting quantity and price or merely quantity, were not admitted to be in defendant's handwriting; but an expert in penmanship testified the same person who wrote exhibit I wrote H and J. Exhibit I tends to contradict defendant in respect to his dealings with Des Marais and was admissible. It is not perceived how exhibits H and J could help or harm either the state or defendant.

Other rulings on the exclusion or admission of evidence do not merit much notice. Counsel for defendant was allowed to show fully the cause for any animosity or ill feeling of the state's witness Iverson towards defendant. To allow more would be to lead the trial away from the case in hand and center it upon a charge against a witness in the case. Whether the witness Kingsley knew or did not know of Iverson's grudge against defendant could be of no service to the jury. Nor is it conceivable that the denial of defendant's motion to strike out the testimony of the sheriff that he was on the lookout for defendant on the day in question was prejudicial. The sheriff's object in the forenoon tends to explain his action in the evening. We find no error in the record which would justify a new trial.

The judgment of conviction is affirmed.